[Crim. Nos. 9825, 9826.    Second Dist., Div. Four.    Feb. 10, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES COSIO AGUILAR, Defendant and Appellant.

(Two Cases.)

Robert W. Stanley for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Irwin M. Friedman, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In case No. 277334 defendant was charged with possession of heroin for purposes of sale in violation of section 11500.5 of the Health and Safety Code. Four prior felony convictions were alleged. Defendant entered a plea of not guilty and denied the alleged prior convictions.

He was convicted by the court after waiver of jury, the prior convictions were found to be true, and he was sentenced to state prison for the term prescribed by law. He appeals from the judgment.

In case No. 272147, defendant was charged with petty theft with a prior conviction of same, in violation of Penal Code section 667. Three prior felony convictions were alleged. Defendant pleaded not guilty, denied the alleged prior convictions and waived a jury trial. The matter was submitted on the transcript of the preliminary hearing. The court found defendant guilty as charged and the alleged prior convictions to be true. Probation was denied and defendant was sentenced to one year in the county jail, the sentence to run concurrently with the sentence in case No. 277334. Although defendant appeals from the judgment in case No. 272147 he raises no grounds of error in his brief on appeal. After examination of the record before us in case No. 272147, we conclude that defendant was properly convicted, and that the judgment should be affirmed. The remainder of this opinion relates to case No. 277334.

The case for the prosecution rested on the testimony of Police Officer Walter Burke. Officer Burke testified that he was experienced in the field of narcotics law enforcement. On July 20, 1963, at approximately 6:15 p.m. he, accompanied by two fellow police officers, went to a motel located at 9137 South Figueroa Street, Los Angeles. The officers were told by the manager that a Mr. Bravo was living in Apartment 14. Officer Burke then went "around" to a window of Apartment 14. The window faced on Figueroa Street. Between the Figueroa Street sidewalk and the window was a row of bushes located directly in front of the window and approximately 6 to 8 inches from it. The row was not a formal hedge, but there were breaks between the several bushes. Burke stepped between these bushes, crouched down, and looked through the window into the apartment. Defendant and Ralph Bravo were inside. Defendant was in the process of looping a belt around his arm. On a nightstand next to where defendant was standing, the officer observed a needle, a spoon, an eyedropper and a small package which appeared to contain narcotics. Burke also observed that defendant had needle marks on his arms. From these observations the officer concluded that defendant was preparing to give himself an injection of narcotics.

Immediately thereafter, Officer Burke and the other officers went to the manager of the motel, obtained a key to Apartment

14 and, using the key, opened the door to the apartment. They had no warrant for arrest or search. Upon entering the room Officer Burke saw defendant standing with a belt looped over his arm. Burke inspected the small package he had seen through the window and, in his opinion, it appeared to contain narcotics. Defendant was placed under arrest and the apartment was searched. In addition to the "small package" on the nightstand, the officers found 12 fingerstalls (which are used to package heroin), and a condom, each containing a white powdery substance. The powder in the condom was "uncut." In Mr. Bravo's coat the officers discovered a quarter of an ounce of a white powdery substance. (It was stipulated at the trial that if a forensic chemist were called he would testify that these items contained heroin.) The apartment was also found to contain two "outfits," a small scale, a bag containing empty fingerstalls, a large quantity of rubber bands, mixing spoons, a can of milk sugar and a can of lactose. Officer Burke testified that in his opinion the narcotics were being held for sale. All the aforementioned items found in the apartment were admitted in evidence over objections.

Defendant contends that the items found in the apartment were the product of an illegal search and seizure and thus were erroneously admitted in evidence. █ In particular, defendant argues that the arresting officer's conduct in looking through the apartment window from a vantage point not open to the public constituted an illegal search.

Defendant relies on *Bielicki* v. *Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288] and *People* v. *Regalado,* 224 Cal.App.2d 586 [36 Cal.Rptr. 795], neither of which involved observations made through a window. In *Bielicki, supra,* police officers climbed upon the roof of a restroom in an amusement park at the invitation of the amusement park owner and spied on the occupants of the enclosed toilet stalls therein through a small pipe installed in the ceiling. The Supreme Court held that such conduct constituted an illegal search. In *Regalado, supra,* the act of a police officer in looking through a tiny hole bored in a hotel room door was held to be an unreasonable search. We believe, however, that the instant case is governed by the law as stated in *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]. The Supreme Court there held that an officer's looking through a window does not constitute an unreasonable search and that the officer was entitled to act upon what he saw through such observations. The court in *Bielicki, supra,* specifically negated any possible application of such rule to the facts of that case, stating at page 607,

"[T]he present case is not governed by the settled rule that 'looking through a window does not constitute an unreasonable search.' (*People* v. *Martin* (1955) 45 Cal.2d 755, 762 [290 P.2d 855].)" In the instant case, the record does not show that the window was not open to public view. If a defendant conducts his activities under circumstances indicating an indifference to public observation, he cannot object if the observer is a policeman.

From what he observed through the window, the arresting officer was clearly reasonable in forming the belief that defendant was then in possession of narcotics, thus justifying the warrantless arrest and search incident thereto, which followed.

Noncompliance with Penal Code section 844, requiring a demand for admittance and statement of purpose prior to entry, was justified under the circumstances. Had the officers complied with section 844 the narcotics could easily have been disposed of before entry into the apartment was secured. As stated in *People* v. *Maddox*, 46 Cal.2d 301, 306 [294 P.2d 6], "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose."

Defendant challenges the sufficiency of the evidence. He argues that the evidence merely established his presence in a room where narcotics were found, that there was nothing in the record to show that he exercised dominion and control over the drugs. Such argument lacks merit. Viewed in the light of the rules governing appellate review as enunciated in *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778], the evidence clearly shows that defendant was apprehended at a time when he was in the act of preparing to take an injection of narcotics; a package of heroin and the paraphernalia used to administer it were in plain sight near the spot where he was standing. To sustain the conviction it was not necessary to show that defendant was in exclusive possession of the premises nor that he had actual physical possession of the drugs. (*People* v. *Prezas*, 195 Cal.App.2d 850, 854 [16 Cal.Rptr. 274].)

The evidence, consisting of the quantity of heroin found, plus the equipment for weighing, measuring, diluting and packaging it, when taken together with the testimony of an officer experienced in the narcotics field, that in his opinion the heroin was being held for sale, was sufficient to sustain the finding of possession for sale.

Judgments of conviction affirmed.

Files, P. J., and Kingsley, J., concurred.