[Crim. No. 10771.    Second Dist., Div. Four.    Jan. 27, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. EMORY WOODS, Defendant and Appellant.

Emory Woods, in pro. per., and Raymond S. Finn, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant and one Matthew Green were charged with possession of heroin for sale on or about April 27, 1962, in violation of section 11500.5 of the Health and Safety Code. After numerous continuances, on December 10, 1964, the case was called for trial. A jury trial was waived and the court found defendant guilty. His motion for new trial was withdrawn, probation was denied and he was sentenced to state prison. The sentence was ordered to run concurrently with a sentence in federal court.

On the issue of probable cause for arrest it was stipulated that Officer Frank Northrup was an expert in the field of narcotics investigation and the detection of narcotics sellers and those under the influence of narcotics. Northrup testified that, on April 27, 1962, he, his partner Sergeant Buckner and Agent Brewer of the State Bureau of Narcotics, went to the vicinity of an apartment located at 4270½ Leimert Boulevard in Los Angeles. Northrup had received information from an informant the evening before that defendant was dealing in heroin from this apartment. He had received information from this same informant on a prior occasion. (There is no showing however, that the information received on that occasion had proven correct.) At about 9 a.m. the officers were in an alley at the rear of the apartment when Northrup observed defendant leave the apartment and walk into a garage at the rear of the building. The garage contained a new Oldsmobile which, according to police information, belonged to defendant. When defendant walked out of the garage into the alley the officers approached him. Officer Northrup identified himself and asked defendant his name. After initially stating that his name was Elton Hill, defendant admitted that he was Emory Woods. Northrup then asked defendant if he was using narcotics. Defendant replied, "Yes, I am using. I am trying to cut down, but I am using." The officer observed what appeared to be fresh puncture wounds on defendant's arms and then placed him under arrest.

The officer testified as follows:

"At that time, I observed on his arms what appeared to me to be fresh puncture wounds. After seing these puncture wounds and him having stated that he was using narcotics, I placed him under arrest." The officer further testified that he arrested defendant "For violation of 11721 of the Health and Safety Code, illegal use of narcotics."

Defendant was then asked if he had any narcotics in his apartment, and he answered "No." Officer Northrup stated "Would you mind if we went up and looked around?" Defendant replied, "No, go ahead." When asked whether anyone was in the apartment, defendant indicated that his girl friend, a man he called Major, and the latter's wife and children, were in the apartment. They approached the apartment and Northrup asked for a key. Defendant reached in his pocket and handed the officer a key. Northrup opened the door and entered. As he did so he observed Matthew Green (referred to by defendant as Major) in the kitchen. Green turned and made a motion as if he placed something into his mouth and swallowed it. The officer observed numerous balloons at Green's feet. He picked them up and saw that they contained a white powder resembling heroin. A further search uncovered milk sugar and numerous measuring spoons on a shelf in the kitchen. A balloon containing three white tablets was found in a man's suit in the living room closet. When shown the tablets defendant said that they were his and that he used them to try to cut down on his heroin habit. Northrup stated that the pills looked like Dolophine tablets, to which defendant replied, "They are Dollies. I have been using them."

At about this time Sergeant Buckner left the apartment and went to the garage. He returned five minutes later and had defendant brought to the garage. Buckner had found a cloth package on a shelf in the garage, inside of which were five condoms of a white powder resembling heroin. He showed the package to defendant and asked him if it was his. Officer Northrup heard defendant reply, "Yes, it's all my stuff." Defendant then said "There should be about five pieces there."

Officer Northrup had a further conversation with defendant (the record does not indicate when or where this conversation occurred) in which defendant again stated that everything was his; "his connection had brought the stuff" over

during the night and left it in the garage for him; he had come down that morning to get some of it to take back to the apartment.

From the quantity of heroin found, the packaging paraphernalia and the milk sugar, Officer Northrup concluded that defendant possessed the heroin for purposes of sale. He testified ''Well, a person that is a user of heroin, usually they are not in possession of more than possibly a gram at one time. The amount found here, I am not positive, but I think it was somehwere between 130 and 140 grams of heroin.'' The officer further testified, that defendant was extremely cooperative at all times prior to and after his arrest; defendant was not advised by the officers of his rights to counsel and to remain silent. Green was also arrested with defendant; the officers had no arrest or search warrant.

Defendant testified that he was approached by the officers when he went to get his car. They arrested and handcuffed him. He told the officers he did not use narcotics and denied that there were narcotics in the apartment. His keys were removed from his pocket and the officers entered the apartment without his permission.

Defendant contends that the narcotics introduced in evidence against him were acquired through an illegal search and seizure. He further contends that statements made by him admitting the use of and ownership of the narcotics were inadmissible under *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361].

As stated in *People* v. *Haven,* 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927], ''Defendant made a prima facie case that the search and seizure were illegal when he established that they were made without a warrant. The burden then rested on the prosecution to show proper justification. [Citations.]'' To carry this burden in the instant case required a showing of reasonable or probable cause for the initial arrest of defendant. ■ The People may not rely upon the alleged consent to search given by defendant if the arrest was illegal (*People* v. *Herrera,* 221 Cal.App.2d 8, 11 [34 Cal.Rptr. 305]; *People* v. *Coleman,* 235 Cal.App.2d 612, 616-617 [45 Cal.Rptr. 542]) because ''A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom.'' (*People* v. *Haven, supra,* 59 Cal.2d 713, 719.)

Penal Code, section 836, provides in pertinent part: "A peace officer may . . . without a warrant, arrest a person:

"1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence.

". . . . . . . . . . .

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, . . ."

█ "Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. [Citations.]" (*People* v. *Cockrell,* 63 Cal. 2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) █ The arresting officer here testified that he arrested defendant for violation of section 11721 of the Health and Safety Code. Under section 11721 the state of being under the influence of narcotics is a misdemeanor violation. Although it was stipulated that the officer was an expert in detecting those under the influence of narcotics, the officer did not testify that he believed defendant was under the influence of narcotics and there is nothing in the record which would justify a reasonable belief on his part that, at the time of his arrest, defendant was under the influence. Neither the observation that defendant had "fresh" marks nor defendant's admission that he was using, sufficiently establishes this fact. As pointed out above, an arrest for a misdemeanor is justified only where an officer has reasonable cause to believe that the crime was committed in his presence.

However, defendant's admitted use of narcotics in violation of section 11721, together with the appearance of his arms, gave the officer reasonable cause to believe that defendant had recently possessed narcotics in violation of Health and Safety Code section 11500. The officer was entitled to make an arrest for that felony offense. (*People* v. *Rios,* 46 Cal.2d 297 [294 P.2d 39]; *People* v. *Alvarado,* 208 Cal.App. 2d 629 [25 Cal.Rptr. 437]; *People* v. *Elliott,* 186 Cal.App.2d 178 [8 Cal.Rptr. 795].) Thus, where the officer believed that defendant had simultaneously committed two closely related offenses, one a felony and one a misdemeanor, the fact that the officer mentioned the wrong one in his testimony should not invalidate the arrest.

█ Defendant contends that the observation by the officer of defendant's puncture marks constituted a search. He directs our attention to the following testimony of the

officer on cross-examination: "Q. One other thing: in order for you to see the marks on his arms, it necessitated his sleeves being rolled up, didn't it?

"A. Yes. When I originally stopped him—

"Q. You have answered my question." There was no other evidence regarding how the officer observed defendant's arms. It is certainly unclear from the above quoted testimony as to exactly what took place concerning defendant's sleeves. The lower court might have assumed that defendant voluntarily consented to rolling up his sleeves—for the officer testified that defendant was completely cooperative at all times. Or it could have interpreted the testimony to the effect that defendant's sleeves were rolled up when the officers first approached him. The record does not disclose a search of defendant's arms. It does show however, that the officer was about to explain what had occurred when his testimony was cut off by defendant. Under these circumstances defendant is in no position to challenge any uncertainty in the record in this respect. (See *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535].) Furthermore, defendant's objection below was not directed to the propriety of the officer's viewing defendant's arms. (*People* v. *Carter,* 192 Cal.App.2d 648, 661 [13 Cal.Rptr. 541].)

▌ The arrest of defendant being lawful, the subsequent search of the apartment is justified by his consent to the search. A search pursuant to the defendant's freely given consent is not unreasonable. (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852].) ▌ Whether the consent was in fact voluntarily given or was in submission to express or implied authority, as defendant suggests, was a question of fact for the trial judge, whose finding, since supported by substantial evidence, is binding on this court. (*People* v. *Jackson,* 191 Cal.App.2d 296 [12 Cal.Rptr. 748].)

*Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641], cited by defendant in support of the argument that his consent was in submission to police authority and thus not voluntary, is not in point. In *Castaneda* the evidence showed that the defendant repeatedly attempted to lead the officers away from his home after purportedly giving his consent to search it. Clearly, such acts were evidence of the lack of free and voluntary consent to the search. But here, the officer's testimony discloses complete cooperation by defendant, and no acts which could indicate defendant's consent was not free and voluntary.

■ The search of the garage, undertaken after the officers had entered defendant's apartment and found Matthew Green in possession of and attempting to dispose of what appeared to be heroin, may be justified as incidental to Green's arrest. ■ A search is incidental to an arrest if ". . . it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope." (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) ■ A search of an apartment garage is a search of the premises where the arrest is made. (*People* v. *Smith,* 166 Cal.App.2d 302 [333 P.2d 208].) (And see *People* v. *Cockrell, supra,* 63 Cal.2d 659, where a search of trash cans in defendant's back yard was upheld as incidental to defendant's arrest which took place inside her house.)

Defendant contends that evidence of the incriminating statements made by him to the police was inadmissible because he was not forwarned of his constitutional rights in violation of *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] and *People* v. *Dorado, supra,* 62 Cal.2d 338. ■ The statement made by defendant when first approached by the officers admitting the use of narcotics, was clearly made at a time when the investigation was only a general inquiry, before he was taken into custody, and was not the product of a process of interrogation. Evidence of the statement was therefore admissible. (See *People* v. *Mora,* 232 Cal.App.2d 400, 406 [42 Cal.Rptr. 725].)

■ We need not decide the question whether the three statements thereafter made by defendant, in which he admitted ownership of the heroin found in the garage and the tablets found in the apartment, were inadmissible under *Escobedo-Dorado.* The trial in this case was held on December 10, 1964, several months after *Escobedo* v. *Illinois, supra,* was decided on June 22, 1964, and after the first decision in *People* v. *Dorado* (Cal.) 40 Cal.Rptr. 264, 394 P.2d 952, which was filed on August 31, 1964. Although, at the trial defendant's counsel (who is not his counsel on this appeal), strenuously objected to the introduction of the contraband found at the scene of defendant's arrest on the ground that it was acquired as the result of an illegal search and seizure, he did not object to the introduction of the evidence of defendant's statements on the ground the officers failed to warn defendant of his constitutional rights. We have no doubt that counsel, an experienced trial lawyer, was well

aware of the interpretation given the *Escobedo* decision by the California Supreme Court in the first *Dorado* opinion; and that he realized the presence of the issue as to the admissibility of defendant's statements on the basis of this interpretation of *Escobedo*. It is apparent that counsel's failure to raise this issue was a matter of tactics. Defendant's case rested on the search and seizure question. Had the court ruled that the contraband was illegally seized, as counsel for defendant argued, the People's case would have fallen. But an objection to the introduction of evidence of defendant's statements—while it might have been sustained—would not have aided defendant, for he would surely have been convicted without this evidence. Under the circumstances presented the failure to raise the issue at the trial precludes defendant from raising it here. (See *People* v. *Palmer*, 236 Cal.App.2d 645, 650 [46 Cal.Rptr. 449].)

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied February 14, 1966, and appellant's petition for a hearing by the Supreme Court was denied March 22, 1966. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.