[Crim. No. 11151. Second Dist., Div. Three. Aug. 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL C. ARGUELLO, Defendant and Appellant.

Manuel C. Arguello, in pro. per., and Frank Duncan for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and James A. Aiello, Deputy Attorneys General, for Plaintiff and Respondent.

KAUS, J.—A jury found defendant guilty on a count charging him with possession of heroin for sale. (Health & Saf. Code, § 11500.5.) Outside of the presence of the jury defendant had admitted a conviction of murder suffered in 1950. A motion for new trial was denied, but the court reduced the offense to simple possession of heroin. (Health & Saf. Code, § 11500.) Defendant appeals.

We take the statement of facts leading to defendant's arrest and the seizure of the heroin from his own brief: "Various officers of the State Narcotic Agency and members of the Los Angeles Police Department, accompanied by defendant's parole officer, Lloyd Starkweather, went during the night time to the 100 block of South Hill Street and at that time saw the defendant approaching the area where they were standing. The defendant, when about 100 feet away from the officers, stopped and turned away and started walking in the opposite direction; at this time Mr. Starkweather called defendant's name and defendant stopped, turned around and waited. Upon approaching the defendant, the defendant was ordered to accompany the officers to the State Building. While accompanying the officers, defendant pulled a brown paper bag from his hip pocket and threw it into some bushes; at this time there was a short struggle, after which the officers recovered the bag and therein found the bag to contain 4 condoms filled with a white powdery substance which was identified as being heroin. At the time the defendant was questioned relative to the throwing of the bag he told the officers he had just found the bag in the parking lot and 'thought it was pills.' "

Officer Cota, one of the officers involved, who testified to an extensive background in narcotics investigation also testified as an expert that in his opinion the purpose for which the defendant possessed the heroin was "for sale." Before he came to that conclusion he had personally examined defendant and determined that he was not a user of narcotics. The amount of narcotics found was sufficient to produce five hundred No. 5 capsules. A No. 5 capsule is the size of capsule which a user administers to himself; depending on his tolerance he uses anywhere from one to five capsules per injection.

When asked what factors led the officer to his opinion he said, among other things: "The manner in which it was packaged. One condom was doubled and you had two other condoms that were one package in itself. Each are significant of a quarter ounce of heroin which is generally the amount that a major narcotic peddler would sell, either

quarter ounces, half ounces or ounces of heroin.'' Pressed for more reasons he gave the following answer : ''If the individual is not an addict, by reason of an examination it doesn't show he was an addict and he was in possession of that amount of heroin I would form the opinion *that he is a major violator* and is in possession of this amount of narcotics for sale.'' At that point counsel for defendant moved for a mistrial. The motion was denied after lengthy argument, but the court admonished the jury to disregard ''in its entirety the last question of the People . . . and the answer given by the witness . . . both the question and the answer. . . . It is not an issue to be determined under the Information in this case.''

On appeal defendant maintains, as he did below, that the seizure of the heroin was the fruit of an illegal arrest. Actually there was no formal arrest before defendant threw the paper bag into the bushes. To be sure the officers ordered him about and there is no question that had he tried to get away, force would have been used. (cf. *People* v. *Furnish*, 63 Cal.2d 511, 515-517 [47 Cal.Rptr. 387, 407 P.2d 299].) It would therefore be more accurate if defendant claimed that the heroin was obtained as the result of an illegal assertion of authority. (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 273 [294 P.2d 23].) The contention, however, cannot stand in the light of *People* v. *Hernandez*, 229 Cal.App.2d 143 [40 Cal.Rptr. 100] holding that the ''requirement of reasonable or probable cause does not apply to search of a paroled prisoner when conducted by his parole supervisors.'' It is clear that defendant disposed of the package in fear of such a legal search.

Defendant argues that in view of *People* v. *Dorado*, 62 Cal. 2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], *Hernandez* is no longer good law. He points to the fact that at the time Dorado was questioned he was an inmate of San Quentin Prison, but that his constitutional right not to be questioned without the proper warnings was nevertheless recognized. The court in *Hernandez* was extremely careful not to say that a parolee has no constitutional rights. The true question is whether the search of a parolee without probable cause is ''unreasonable'' within the meaning of the Fourth Amendment. *Hernandez* holds that it is not. We see nothing in *Dorado* which would in any way affect *Hernandez*.

Officer Cota's expert testimony to the effect that the heroin was possessed ''for sale'' was attacked as ''invading the province of the jury, going to the precise [ultimate] issue of the case and as not being a proper subject matter of expert testimony.'' These are also the contentions on appeal.

The problem of the proper scope of expert testimony in cases involving possession ''for sale'' cannot be disposed of by reference to the fact that on motion for new trial the court modified the verdict to one of simple possession. From the expert testimony the jury learned that the heroin supposedly found by defendant in a parking lot was worth between $1,000 and $25,000 at retail. Although the inference that heroin worth a lot of money is less likely to be found lying around in parking lots[1] than small quantities is not the only rational one, certainly the jury was entitled to infer that the high value of the narcotics made defendant's explanation that much more unlikely.[2]

■ The objection that a question calls for an answer which ''usurps the function of the jury'' has been called ''a mere bit of empty rhetoric.'' 7 Wigmore, Evidence (1940) § 1920.) We agree. (See also McCormick on Evidence, § 12.) The jury is not bound to follow the expert's opinion and was presumably so advised. (Pen. Code, § 1127b.)

■ The objection that the opinion of an expert coincides with the ''ultimate issue'' in the case is equally untenable as such. (7 Wigmore, Evidence (1940) § 1921: McCormick on Evidence, § 12.)

In *People* v. *Wilson*, 25 Cal.2d 341, 349 [153 P.2d 720] the Supreme Court said: ''There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case. 'We think the true rule is that admissibility depends on the nature of the issue and the circumstances of the case, there being a large element of judicial discretion involved. . . . Oftentimes an opinion may be received on a simple ultimate issue, even when it is the sole one, as for example where the issue is the value of an article, or the sanity of a person; because it cannot be further simplified and cannot be fully tried without hearing opinions from those in better position to form them than the jury can be placed in.'

---

[1]Defendant testified in his own behalf and continued to maintain—as he did at the scene—that he found the paper bag in a parking lot just before he was arrested.

[2]Conceivably the prosecution would have been able to introduce evidence concerning the value of the heroin on rebuttal, had defendant offered the same explanation as a defense to a simple charge of possession, but rather than reconstruct a hypothetical trial, we feel that the problem should be discussed, particularly since this type of expert testimony is quite common in cases of this nature (*People* v. *Aguilar*, 232 Cal.App.2d 173, 178 [42 Cal.Rptr. 666]; *People* v. *Woods*, 239 Cal.App. 2d 697, 701 [49 Cal.Rptr. 266]) and we have been unable to find any case specifically commenting on its propriety.

(*Hamilton* v. *United States,* 73 F.2d 357, 358, 359; *Rackoff* v. *United States,* 78 F.2d 671, 673; see, also, *Nolan* v. *Nolan,* 155 Cal. 476, 480 [101 P. 520, 132 Am.St.Rep. 99, 17 Ann.Cas. 1056]; *Giraudi* v. *Electric Improv. Co.,* 107 Cal. 120, 127 [40 P. 108, 48 Am.St.Rep. 114, 29 L.R.A. 596]; *Sim* v. *Weeks,* 7 Cal.App.2d 28, 39 [45 P.2d 350]; *Hurwit* v. *Prudential Ins. Co.,* 45 Cal.App.2d 74, 82 [113 P.2d 691]; 78 A.L.R. 755; 4 Wigmore Evidence (3d ed.) § 1921; 7 N.C.L.Rev. 320.) In the present case there was no other practicable way of framing the questions if they were to serve the purpose of obtaining the benefit of the witness's expert knowledge as to matters on which enlightenment of the jury by the expert was proper. (Code Civ. Proc., § 1870, subd. 9; *Moore* v. *Norwood,* 41 Cal.App.2d 359, 366 [106 P.2d 939]; *Engelking* v. *Carlson,* 13 Cal.2d 216, 221 [88 P.2d 695]; *Patterson* v. *Marcus,* 203 Cal. 550, 553 [265 P. 222]; *Perkins* v. *Trueblood,* 180 Cal. 437, 443 [181 P. 644].) '' (*Ibid.,* pp. 349-350.)[3]

Whether or not an opinion coincides with an ultimate issue is a neutral factor as far as its admissibility is concerned. If the question cannot be further simplified, the opinion is admissible in spite of the fact that it ''calls for the ultimate issue.'' Opinions as to value in eminent domain cases are a good example. If the question can be simplified, it should be. Thus the rule that an expert can testify whether a structure is built in accordance with standard and accepted construction methods and architectural practice, but not whether it is safe (*Blinkinsop* v. *Weber,* 85 Cal.App.2d 276, 283 [193 P.2d 96]) exemplifies the many situations where opinion evidence is inadmissible, not because it goes to the ultimate issue, but because it goes beyond the point where the expert can assist the court as an expert. When he testifies to conclusions which even a lay jury can draw, the expert is no longer testifying ''on a question of science, art or trade'' in which he is more skilled than the jury.[4] (Code Civ. Proc., § 1870, subd. 9.) As Profes-

---

[3] See also *People* v. *Cole,* 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435]; *People* v. *Brown,* 49 Cal.2d 577, 587 [320 P.2d 5]; *People* v. *Polk,* 61 Cal.2d 217, 233 [37 Cal.Rptr. 753, 390 P.2d 641]; *People* v. *Wolff,* 61 Cal.2d 795, 811 [40 Cal.Rptr. 271, 394 P.2d 959]; *People* v. *Patterson,* 169 Cal.App.2d 179, 185 [337 P.2d 163]; *People* v. *Peoples,* 212 Cal.App.2d 581, 583 [28 Cal.Rptr. 120].

[4] Wigmore puts it this way: ''The true theory, then, of the Opinion rule, in the sense we are here to use, is simply that of the exclusion of supererogatory evidence. It is not that there is any fault to find with the witness himself or the sufficiency of his sources of knowledge or the positiveness of his impression; but simply that his testimony, otherwise unobjectionable, is not needed, is *superfluous.*'' (7 Wigmore, Evidence (3d ed. 1940), § 1918.)

sor McCormick says: ''There is no necessity for such evidence, and to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses.'' (*op. cit.* p. 25.)[5]

The third ground of objection made below was that Officer Cota's testimony was not the proper subject matter of expert testimony. To discuss the validity of that objection it is necessary to set forth the proceedings in some detail. When Officer Cota was called as an expert in the narcotics field and had testified to an extensive background as a narcotic agent for the State of California and as a police officer, the prosecutor first attempted to question him on the basis of his experience and personal observation. In this he was repeatedly blocked by successful objections. These objections were clearly good.[6] Frustrated in this approach, the prosecutor then switched to hypothetical questions. Again he got nowhere. Cota's testimony was then interrupted by the testimony of the police chemist who identified the substance as being 31 grams of heroin, including the weight of the 4 condoms, which weighed about 2 grams apiece. The percentage of pure heroin in the powder was 20 percent. Cota was then recalled and the following hypothetical question was put to him: ''Officer, assume these facts to be true: That police officers, narcotics officers, stopped an individual and requested that he accompany them to their office; that on the way to the office he suddenly reaches in his pocket and pulls out a brown paper bag and throws this bag into some bushes; that the officers observe him do this; that they go to the bag and pick it up and take it to their office along with the defendant and examine the contents of the bag and find it to be condoms containing a white powdery substance packaged in the manner that the white powdery substance was contained in the condoms which is part of People's Exhibit 1; that the white powder is heroin, that it weighs 31 grams and an allowance is made of two grams for each condom and the percentage of heroin within the total mass of the powder is approximately 20 percent heroin; that the officers then examine the defendant's arms and eyes and

---

[5]The objection that opinion evidence ''goes to the ultimate issue'' has been given a decent burial by our Legislature in the Evidence Code, section 805 which reads as follows: ''Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact.'' The comment to section 805 states that it is declarative of existing law.

[6]One question was: ''Officer, did you form any opinion concerning this defendant as a result of your investigation?''

arrive at the conclusion that the defendant or this person that they observed throw the bag is not addicted to heroin and let us assume in this hypothetical question that the person that threw this object containing the heroin knew or had knowledge of the contents as to the substance itself and the fact that it was heroin. Based on your experience as a narcotics officer in that hypothetical situation could you form or do you form an opinion as to the purpose for which this person would be in possession of the heroin?'' Over objection he then testified that the purpose of the possession of the heroin was ''for sale.''

The accepted criterion for the admissibility of opinion evidence is articulated in *People* v. *Cole*, 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435] : ''Although courts have not always used the same language, the decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.''

Whether or not the opinion asked of Cota meets this test cannot be answered by a simple ''yes'' or ''no.'' Undoubtedly, the lay jury which was being asked to answer the question whether defendant possessed the heroin for sale had no way of knowing whether or not the quantity described by the chemist, at the level of purity to which he testified, was more than the supply which a person who is addicted might carry about for his own use or which one who is not addicted might have on his person to furnish to an addict as a friend. The jury needed help from an expert so that it could determine whether or not the quantity of narcotics was such that it could be described as defendant's stock in trade. It was entitled to be informed—as it was—of the number of capsules which the heroin would yield, of the habits of users with respect to the amounts in their possession, of the retail price of the heroin involved and of the methods of packaging heroin for use as distinguished from packaging for sale.[7]

On the other hand it is obvious that the hypothetical ques-

---

[7]We certainly do not intend this to be an inclusive list of the matters which, in this field, are ''sufficiently beyond common experience that the opinion of an expert would assist'' the jury. In *People* v. *Woods*, 239 Cal.App.2d 697 [49 Cal.Rptr. 266], the expert formed significant conclusions, which might have escaped the jury, not only from the amount of heroin, but also from the presence of packaging paraphernalia and milk sugar.

tion contained certain elements from which the jury could have concluded just as easily as Cota that the heroin was possessed for the purpose of sale. Thus it seems to us—at least without the benefit of reasons not disclosed by this record—that any layman is as competent as an expert to form the opinion that a nonuser who possesses a quantity of narcotics is more likely to possess it for sale than for use and that this is so regardless of the quantity involved. Similarly it seems to us that the element of knowledge of the narcotic character of the substance should not have been included in the hypothetical questions[8] as an element on which the officer based his conclusion. Any layman can draw the inference that if a person goes around with 25 grams—about one ounce—of a white powdery substance, it is more likely that he possesses it for sale if he knows that it is heroin, than if he thinks it is granulated sugar.

Thus, as this particular hypothetical question was put to the witness, it asked him to base his conclusion in part on inferences which the jury could have drawn. To that extent the question exceeded the scope of the proper use of expert opinion testimony.

 Speaking generally, it appears to us that in most cases of this nature it would be unnecessary to ask the expert the "ultimate" question, namely whether in his opinion the particular narcotics were held for sale. Once he has given the jury the benefit of his experience with respect to the habits of users, the quantities involved, the value of the narcotics found in defendant's possession, the customary methods of packaging them for wholesale, for retail and for use and matters of this nature, the jury should be as able as the witness to form an opinion whether or not the narcotics involved in the prosecution were held for sale. It has received all the help which it needs.

 This does not mean that in all cases it is prejudicial error to exceed the proper scope of expert testimony. Without even considering the question of discretion of the trial court (*People* v. *Cole*, 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435] ; *People* v. *Haeussler*, 41 Cal. 252, 260 [260 P.2d 8] ; *Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716, 727 [232 P.2d 572] ), it is obvious that defendant suffered no prejudice here. When the testimony was admitted he was still

---

[8]Just why the prosecutor chose to proceed by way of a hypothetical question is not clear. The only factual element not based on Cota's personal knowledge or experience was the chemical analysis.

charged with possession for sale and the only element of the expert testimony which could conceivably have harmed him as far as the end result is concerned—except for the last point discussed in this opinion—was the reference to the value of the narcotics. This was, however, eminently proper under the principles just discussed.

Finally we turn to the incidents during the examination of Cota previously quoted, where at one point he said: "That a quarter ounce of heroin . . . is generally the amount that a *major narcotic* peddler would sell, either quarter ounces, half ounces or ounces of heroin" and at another, that in his opinion a nonaddicted individual, in possession of the amount of heroin which defendant had, was a "major violator."

Defendant approaches the problem from the point of view of prejudicial misconduct of the prosecutor. In this he is obviously mistaken. The questions to which Cota responded in the manner shown were quite innocuous. The most that can be said is that the witness might have been more guarded. There is nothing in the record to show that when he said that major narcotic peddlers usually sell heroin in the quantities mentioned he was not telling the truth or that the apparent underlying assumption, namely that defendant intended to sell the heroin as it was packaged at the time and not in smaller quantities, was incorrect. If the evidence indicates that defendant was not only a peddler but a "major" peddler and the evidence is admissible to strengthen the inference that the heroin was possessed for sale, he should only be able to complain if the prejudicial effect of such evidence outweighs its probative value. Although the record does not show affirmatively that the trial court weighed one against the other (*People* v. *Ford,* 60 Cal.2d 772, 801 [36 Cal.Rptr. 620, 388 P.2d 892]) no objection of any kind was made to the officer's first answer. The second answer was stricken upon objection. Even if it is difficult to "unring a bell," we cannot say that a different result was either probable or possible without the claimed misconduct of the witness. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 [84 S.Ct. 229, 11 L.Ed.2d 171].)

The judgment is affirmed.

Ford, J., concurred.

SHINN, P. J.—I concur in the judgment. It is my opinion that it is for the trier of fact to determine the intentions and

purposes of a defendant from his conduct and other circumstantial evidence, and that in the trial of that issue there is no place for the opinions of professed mind readers. It will therefore be error in a prosecution for possession of narcotics for sale to elicit from a police officer, or other witness, the opinion that the defendant had an intention to sell the narcotics in his possession. Such an opinion would be as incompetent as an opinion that the defendant knew that the substance he had was a narcotic.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1966.