[Crim. No. 4655.   Third Dist.   Dec. 7, 1967.]

In re EMORY WOODS on Habeas Corpus.

Burl W. Waits, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Respondent.

FRIEDMAN, J.—Petitioner seeks habeas corpus, attacking his conviction of possessing heroin for sale. (Health & Saf. Code, § 11500.5.) His nonjury trial occurred on December 10, 1964, and judgment of imprisonment was pronounced January 18, 1965. Petitioner took an appeal. His conviction was affirmed by the Court of Appeal, Second District, Division Four, on January 27, 1966. The decision is reported in *People v. Woods*, 239 Cal.App.2d 697 [49 Cal.Rptr. 266]. A petition for hearing was subsequently rejected by the State Supreme Court.

On his appeal he claimed violation of the *Escobedo-Dorado* rule, governing admissibility of evidence of incriminating extrajudicial statements to the police which are not preceded by appropriate warnings. (*Escobedo* v. *Illinois*, 378 U.S. 478, 490-491 [12 L.Ed.2d 977, 84 S.Ct. 1758]; *People* v. *Dorado*, 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361].) The appellate court noted that petitioner's trial took place after June 22, 1964, the date of the *Escobedo* decision, and after August 31, 1964, the date of the California Supreme Court's final decision in the *Dorado* case. (40 Cal.Rptr. 264, 394 P.2d 952); that his trial counsel's inferably deliberate decision to refrain from objection in the trial court precluded the objection on appeal. (*People* v. *Woods, supra,* 239 Cal.App.2d at pp. 704-705.) The court also held that narcotics found by the police were not the product of an illegal search and seizure.

*People* v. *Doherty,* 67 Cal.2d 9 [59 Cal.Rptr. 857, 429 P.2d 177], holds that in the absence of special circumstances justifying an inference of knowing and intelligent waiver, no waiver of an *Escobedo-Dorado* claim can be assumed in cases tried before January 29, 1965, the date of the second and final *Dorado* decision. The *Doherty* opinion expressly disapproves of *People* v. *Woods, supra,* and several similar decisions "insofar as [they] rest on a contrary assumption. . . ." In view of this express disapproval we issued an order to show cause in response to petitioner's application for habeas corpus.

We abstract the statement of the facts of the case from *People* v. *Woods, supra,* 239 Cal.App.2d at pages 699-701:

"On the issue of probable cause for arrest it was stipulated that Officer Frank Northrup was an expert in the field of narcotics investigation and the detection of narcotics sellers and those under the influence of narcotics. Northrup testified that, on April 27, 1962, he, his partner Sergeant Buckner and Agent Brewer of the State Bureau of Narcotics, went to the vicinity of an apartment located at 4270½ Leimert Boulevard in Los Angeles. Northrup had received information from an informant the evening before that defendant was dealing in heroin from this apartment. He had received information from this same informant on a prior occasion. (There is no showing however, that the information received on that occasion had proven correct.) At about 9 a.m. the officers were in an alley at the rear of the apartment when Northrup observed defendant leave the apartment and walk into a garage at the rear of the building. The garage contained a new Oldsmobile which, according to police information, belonged to defendant. When defendant walked out of the garage into the alley the officers approached him. Officer Northrup identified himself and asked defendant his name. After initially stating that his name was Elton Hill, defendant admitted that he was Emory Woods. Northrup then asked defendant if he was using narcotics. Defendant replied, 'Yes, I am using. I am trying to cut down, but I am using.' The officer observed what appeared to be fresh puncture wounds on defendant's arms and then placed him under arrest.

"The officer testified as follows:

" 'At that time, I observed on his arms what appeared to me to be fresh puncture wounds. After seeing these puncture wounds and him having stated that he was using narcotics, I placed him under arrest.' The officer further testified that he

arrested defendant 'For violation of 11721 of the Health and Safety Code, illegal use of narcotics.'

"Defendant was then asked if he had any narcotics in his apartment, and he answered 'No.' Officer Northrup stated 'Would you mind if we went up and looked around?' Defendant replied, 'No, go ahead.' When asked whether anyone was in the apartment, defendant indicated that his girl friend, a man he called Major, and the latter's wife and children, were in the apartment. They approached the apartment and Northrup asked for a key. Defendant reached in his pocket and handed the officer a key. Northrup opened the door and entered. As he did so he observed Matthew Green (referred to by defendant as Major) in the kitchen. Green turned and made a motion as if he placed something into his mouth and swallowed it. The officer observed numerous balloons at Green's feet. He picked them up and saw that they contained a white powder resembling heroin. A further search uncovered milk sugar and numerous measuring spoons on a shelf in the kitchen. A balloon containing three white tablets was found in a man's suit in the living room closet. When shown the tablets defendant said that they were his and that he used them to try to cut down on his heroin habit. Northrup stated that the pills looked like Dolophine tablets, to which defendant replied, 'They are Dollies. I have been using them.'

"At about this time Sergeant Buckner left the apartment and went to the garage. He returned five minutes later and had defendant brought to the garage. Buckner had found a cloth package on a shelf in the garage, inside of which were five condoms of a white powder resembling heroin. He showed the package to defendant and asked him if it was his. Officer Northrup heard defendant reply, 'Yes, it's all my stuff.' Defendant then said 'There should be about five pieces there.'

"Officer Northrup had a further conversation with defendant (the record does not indicate when or where this conversation occurred) in which defendant agains stated that everything was his; 'his connection had brought the stuff' over during the night and left it in the garage for him; he had come down that morning to get some of it to take back to the apartment.

"From the quantity of heroin found, the packaging paraphernalia and the milk sugar, Officer Northrup concluded that defendant possessed the heroin for purposes of sale. He testified 'Well, a person that is a user of heroin, usually they are not in possession of more than possibly a gram at one time.

The amount found here, I am not positive, but I think it was somewhere between 130 and 140 grams of heroin.' The officer further testified, that defendant was extremely cooperative at all times prior to and after his arrest; defendant was not advised by the officers of his rights to counsel and to remain silent. Green was also arrested with defendant; the officers had no arrest or search warrant.

"Defendant testified that he was approached by the officers when he went to get his car. They arrested and handcuffed him. He told the officers he did not use narcotics and denied that there were narcotics in the apartment. His keys were removed from his pocket and the officers entered the apartment without his permission."

We note one circumstance of the trial in addition to the above narrative: that petitioner's attorney put petitioner on the stand for the express purpose of establishing an illegal search and seizure.

Notwithstanding the Supreme Court's undefined disapproval of *People* v. *Woods, supra,* the Attorney General contends that the trial record demands an inference of a knowing and intelligent waiver by petitioner's trial counsel, a waiver which precludes consideration of the *Escobedo-Dorado* claim on review. He relies upon the following dictum in the *Doherty* opinion: "We recognize that defense counsel in a trial held prior to January 29, 1965, might have deliberately developed on *voir dire* facts which would support the exclusion of the statements under the *Escobedo-Dorado* rule, yet omitted to object to their introduction in the hope that upon subsequent appeal the showing would serve to reverse. (Compare the facts in *People* v. *Brown* (1965) 238 Cal.App.2d 924, 928 [48 Cal.Rptr. 204].) Such a tactical maneuver should not generate a valid basis for reversal. If the People should sustain the burden of establishing the fact of such tactics, we would treat defendant's stratagem as a waiver of the objection." (67 Cal.2d at p. 14, fn. 4.)

In *People* v. *Woods, supra,* the court held that petitioner's first statement to the police, admitting the use of narcotics, did not clash with the *Escobedo-Dorado* rule since, at that point, the investigation was general and petitioner was not in custody. We agree. ▮▮ On habeas corpus, however, petitioner's prime attack is aimed at Officer Northrup's testimony, recounting petitioner's admissions that he owned the five containers of heroin found in the garage. This testi-

mony of the officer was elicited on direct examination by the district attorney and without objection by defense counsel.

At the close of the direct testimony, defense counsel examined the officer. The cross-examination concluded with the following colloquy:

"Q. You didn't see [Sergeant] Buckner recover any narcotics in the garage, did you?

"A. I didn't see him when he originally found it, no, but when I came down he showed me where he found it in the garage.

"Q. He had something in his hand?

"A. Yes.

"Q. All right, sir. Did any of your officers advise the defendant that he had a right to counsel before he spoke?

"A. No.

"Q. Did you advise him that anything he may say may tend to incriminate him; that anything that he may say may be used in a court of law against him?

"A. No.

"Q. Did you advise him he need not talk if he didn't want to?

"A. No.

"[DEF. ATTORNEY]: That's all."

The quoted cross-examination demonstrates defense counsel's full awareness of the first *Dorado* decision and its demands. He had not objected to the officer's testimony on direct examination, nor had he chosen to take the officer on *voir dire* to establish the basis for such an objection. Rather, he permitted potential error to occur, then, on cross-examination, elicited facts precisely aimed at the objectives of crystallizing the error into the trial record for the purpose of exploitation on appeal. The cross-examination fully supports the inference drawn in *People* v. *Woods, supra,* that the defense strategy was to utilize illegal search and seizure as the focal defense in the trial court, with the *Escobedo-Dorado* claim reserved for later exploitation on appeal.

Aside from the insignificant difference that facts necessary to support the exclusion were developed on cross-examination rather than *voir dire,* the circumstances fit with precision into the *Doherty* dictum. Consistently with that dictum, we view the defense stratagem as a deliberate waiver of the objection.

A question of professional competence is inevitably aroused by a defense attorney's deliberate failure to object to potentially inadmissible, crucially incriminating evidence and by

the implicit surrender of ability to exploit the inadmissibility on appeal.[1] Petitioner's trial counsel appears to have been retained rather than court-appointed. ■ Gross negligence by retained or court-appointed counsel may amount to a denial of the right to counsel. (*In re Rose,* 62 Cal.2d 384, 386 [42 Cal.Rptr. 236, 398 P.2d 428].) No such negligence appears here. At the time of petitioner's trial existing case law permitted a defendant to urge on appeal a ground which became available after trial even in the absence of trial court objection. (*People* v. *Kitchens,* 46 Cal.2d 260, 262-263 [294 P.2d 17].) The first *Dorado* decision had been vacated by an order for rehearing, and petitioner's attorney could not prognosticate the ultimate *Dorado* holding. In its first *Dorado* decision, the Supreme Court had reviewed the objection in a procedural context quite similar to that existing here, that is, no objection appears to have been made in the trial court and absence of the police warning was established through cross-examination. (*People* v. *Dorado, supra,* 62 Cal.2d at p. 344.) Petitioner's trial counsel had no reason to expect that his client would be burdened with a procedural demand not imposed on Dorado himself. If, of course, his client had nothing to lose by the objection, to abdicate it would have been negligence. There is no basis for assuming that the client had nothing to lose. The prosecution had adduced some circumstantial evidence, however slight, pointing to petitioner as possessor of the heroin. He was one of the occupants of an apartment to which was attached the garage in which the heroin had been found, and his Oldsmobile car occupied that garage. Had petitioner's attorney objected to the incriminating admissions, the prosecution might have sought to establish his ownership of the heroin through additional circumstantial evidence, for example, by producing evidence of petitioner's control over the garage, non-access by Matthew Green, location of the heroin in relation to defendant's car or other such facts. When petitioner's incriminating admission of ownership entered the record without objection, the prosecution had no discernible need for additional evidence connecting him with the heroin. Having established absence of a police warning,

---

[1]There is irony in the notion that in cases tried before the second *Dorado* decision an ignorant attorney's negligent failure to object will permit appellate consideration of the *Escobedo-Dorado* claim, while a knowledgeable attorney's deliberate silence will preclude it. The client seems to suffer more by having a knowledgeable attorney than an ignorant one . (Contrast fn. 4 in *People* v. *Doherty, supra,* with *People* v. *Garcia,* 249 Cal.App.2d 342 [57 Cal.Rptr. 330].)

petitioner's counsel had a basis for believing that, precisely like Dorado, he would be permitted to pursue his objection on appeal. Successful pursuit would deprive the conviction of an indispensable evidentiary underpinning. The attorney's assumptions and choice of tactics were not at all negligent.

The petition for habeas corpus is denied and the order to show cause discharged.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied January 3, 1968, the petitioner's application for a hearing by the Supreme Court was denied January 31, 1968.