[No. H002287. First Dist., Div. Three. Sept. 19, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES JESS STRATTON, Defendant and Appellant.

88

**COUNSEL**

Kenneth M. Quigley and Michael A. Kresser for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Ann K. Jensen and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

WHITE, P. J.—A jury found appellant James Stratton guilty of robbery and found true an allegation that he used a firearm in its commission. (Pen. Code, §§ 211, 12022.5.[1]) On August 1, 1986, the court sentenced him to the lower base term of two years for the robbery and a consecutive term of two years for the enhancement, appellant to be housed at the California Youth Authority. This timely appeal followed. Appellant claims that he was denied effective assistance of counsel because his trial attorney failed to renew the motions to suppress eyewitness identification resulting from an illegal arrest and from an unduly suggestive identification procedure and to move *in limine* to exclude from evidence a hand grenade and sheath knife found in his possession at the time of the illegal detention.[2] He also claims the evidence was insufficient to show personal use of a firearm. We agree that appellant was denied effective assistance of counsel, and we reverse the judgment for that reason.

### The Facts

Tina Mello testified that at about 9:30 p.m. on August 31, 1985, she, Candy Morales, and Nicole Prey were working in an ice cream store in Gilroy when a man later identified as appellant came in, looked out the windows and around the otherwise empty store, and asked Ms. Mello for change for a dollar. She asked if four quarters was okay, opened the cash register, and waited for a dollar bill from the man. He whistled at her, and she moved slightly from behind the cash register to get a better look at him. He lifted his sweat shirt, displaying a partly hidden handgun in his waistband, and told her to hand over the money in the register. She saw that the man's hand was wrapped around a handgun with his finger on the trigger and, in fear, handed over $400 from the register. He took the money and quickly left. She testified that he was wearing a blue baseball cap, faded jeans, a blue sweat shirt, and a bandana around his neck.

Candy Morales was cleaning the walls by the freezer when she realized something was wrong and saw Ms. Mello handing over money to a man at

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] Appellant also raises these contentions in a habeas corpus petition (No. H003495), which we deny as moot by separate order.

the counter. She had about a five-second look at the man's right profile and noticed that he had his hand in his sweat shirt pocket as though he had something "down [t]here." She gave a description similar to Ms. Mello's about the man's apparel. At trial she was somewhat equivocal about identifying appellant, but she testified to recognizing his profile, stating, "I can say that that is the face that I saw when he did turn."

Both witnesses told police that the man looked like Mike Root, a boyfriend of a coworker's friend. They were shown a photo lineup that night and picked out a picture of Mr. Root as a person who resembled the robber. However, he was in prison in Indiana.

Ms. Mello identified appellant from a photo lineup three or four weeks after the robbery. She positively identified him at the preliminary examination and at trial.

Staccia Lovecchio testified that she went to the ice cream store about 9:30 that night, and as she entered she noticed a male sitting on the curb, looking nervous and shaking. As she left the store, she noticed the man stood up, looked in the store, and went back to the curb. Her description of his clothes matched that given by two store employees, but in addition she described light facial hair indicating about a week's growth. She was unable to identify anyone in the first photo lineup. About two weeks later she identified appellant from a photo lineup at the police station. She also positively identified him at the preliminary examination and at trial.

The night of the robbery, Joey Lovecchio was at home when his mother and sister arrived from the ice cream store just as he was taking out the garbage. Joey's mother, Dorothy Lovecchio, testified that it took about four to five minutes to drive from the store to her house. As Joey performed his chore, he noticed a male walking quickly down the street, looking all around nervously. He was carrying a flannel shirt in one hand with what appeared to be an object under the shirt. The man stopped in front of a fence across the street, looked around, then climbed over the fence. Joey, believing the man to be a prowler, called his father, who came outside to investigate by shining a spotlight on the fence. Gilroy Police Officer Charles Ellevan clocked himself running and jogging from the ice cream store to the Lovecchio residence and found that it took him three minutes and six seconds.

About two weeks later, on September 13, 1985, at 9:44 a.m., Gilroy Police Officer Bozzo responded to a suspicious person report and, at the scene, he saw appellant walking along the sidewalk in front of a bank holding a hand grenade directly out in front of him with his finger in the

detonating pin ring. The officer arrested appellant and took the grenade from him. He searched him for weapons and found a knife in a sheath on the right side of his belt. Another officer transported appellant, while Officer Bozzo transported the grenade to the police station. It was determined that the grenade had been deactivated and was a harmless paperweight. Before his release, however, appellant was photographed, and this photo was later used in identification procedures.

Appellant testified in his own behalf. He did not recall where he was on the date of the crime. He explained that he is able to run only at slow speeds and for short distances due to a childhood accident and a series of operations on his ankle. This same accident gave him a trust fund of $120,000 to be held until he was 18 years old. At the time of the crime he still had about $20,000. He received and cashed a $500 check a week before the robbery and another $500 check a few days after.

*Discussion*

*Competence of Counsel*

■ Appellant claims that trial counsel was inadequate. ■ In order to prevail on this claim, appellant has the burden of proving by a preponderance of the evidence that (1) counsel's representation was deficient in that it fell short of prevailing professional standards of reasonableness, and (2) there is a reasonable probability that but for counsel's errors the result of the case would have been different. (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 215-218 [233 Cal.Rptr. 404, 729 P.2d 839]; *People* v. *Fosselman* (1983) 33 Cal.3d 572, 581-584 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *Strickland* v. *Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693, 104 S.Ct. 2052].) ■ Appellant has met this burden.

Appellant correctly contends that counsel should have objected to the introduction of evidence about the circumstances of his arrest and to the introduction into evidence of the knife and the hand grenade. It is readily apparent that an objection to this evidence would have been sustained, since, at best, it was only tangentially relevant to the case at bench, and its potential for prejudice was great. ■ "A question of professional competence is inevitably aroused by a defense attorney's deliberate failure to object to potentially inadmissible . . . evidence and by the implicit surrender of ability to exploit the inadmissibility on appeal." (*In re Woods* (1967) 256 Cal.App.2d 748, 753-754, fn. omitted [64 Cal.Rptr. 382].) We are aware that "[g]enerally, failure to make objections is a matter of trial tactics as to

which we will not exercise judicial hindsight [Citation.] . . . 'It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively . . . Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.' [Citations.]" (*People* v. *Lanphear* (1980) 26 Cal.3d 814, 828-829 [163 Cal.Rptr. 601, 608 P.2d 689], reiterated at 28 Cal.3d 463, 464 [171 Cal.Rptr. 505, 622 P.2d 950].) ■ A showing of this kind is presented here.

Because a defense objection to the evidence regarding the circumstances of appellant's arrest should have been sustained (*People* v. *Henderson* (1976) 58 Cal.App.3d 349, 359-360), and because there is no satisfactory explanation for counsel's failure to object, appellant was denied the assistance of a reasonably competent attorney. (*People* v. *Ledesma, supra,* 43 Cal. 3d at p. 218; *People* v. *Pope, supra,* 23 Cal.3d at p. 426.)

The People suggest that defense counsel may have had a tactic of trying to show that the police arrested appellant for carrying a harmless paperweight and that their overbearing conduct tainted the subsequent identifications. This suggestion is unreasonable and unsupported by the facts or the law. The evidence to which counsel failed to object showed that appellant was arrested when he was carrying a hand grenade directly in front of him with his finger on the detonating pin ring, and he was walking on the sidewalk in front of a bank. Anyone seeing this would reasonably conclude that appellant might detonate the grenade. The fact that it had been deactivated was not apparent, even to the police officer who confiscated it. Appellant's act was likely to cause people seeing him to fear for their safety and even to panic and be hurt. Appellant's acts of holding a grenade in a manner indicating that he was going to detonate it when he was walking on a public street would restrict the free movement of others on the street through fear. These acts constitute a crime. (§ 647c.) No reasonably competent attorney could entertain a belief that the jury would find appellant's acts harmless or innocent.

Furthermore, section 12303 prohibits possession of a destructive device, including a grenade (§ 12301, subd. (a)(2)), and section 12303.2 prohibits possession of a destructive device in a public place. ■ Although it is not clear whether the destructive device must be operable to sustain a conviction for these offenses, it is clear that, because the officer did not know that the grenade was deactivated, he had probable cause to arrest appellant. (Cf. *People* v. *Yoshimura* (1976) 62 Cal.App.3d 410, 414-415 [133 Cal.Rptr. 228], with *People* v. *Heideman* (1976) 58 Cal.App.3d 321, 335-336 [130 Cal.Rptr. 349]; see also *People* v. *Thompson* (1977) 72 Cal.App.3d

1, 3-5 [139 Cal.Rptr. 800]; *People* v. *Westoby* (1976) 63 Cal.App.3d 790, 795 [134 Cal.Rptr. 97].) Accordingly, appellant was properly arrested for these violations of the Penal Code, and the People's hypothetical tactic based on appellant's having acted in a "harmless" manner was unreasonable as a matter of law.

As to the People's suggestion that counsel was reasonably attempting to show overbearing police practices and that somehow appellant was falsely charged, presentation of a defense of mistaken identification did not require introduction of evidence regarding the circumstances that led to the taking of the photograph. ■ An identification procedure is unfair when the police suggest in advance the identity of the person they suspect. (*People* v. *Hunt* (1977) 19 Cal.3d 888, 894 [140 Cal.Rptr. 651, 568 P.2d 376].) ■ They may put any photograph in a photo lineup, which need only contain pictures of persons who match the witnesses' description of the perpetrator of the crime. The police may use a picture of a person who they know is not the perpetrator of the crime under investigation. They may even include a picture that was taken after an illegal arrest in another case. (*People* v. *McInnis* (1972) 6 Cal.3d 821, 825-826 [100 Cal.Rptr. 618, 494 P.2d 690].) "The taking of a photograph during the booking process is standard police procedure (Pen. Code, § 7, subd. 21), bearing no relationship to the purpose or validity of the arrest or detention. Commonly known as 'mug shots,' the photos are kept in permanent files regardless of the eventual disposition of the case; indeed, thousands of persons ultimately found to be entirely innocent undoubtedly have their photographs, as well as fingerprints, on record with law enforcement agencies. [Citations.]" (*McInnis, supra,* at pp. 825-826.)

■ A defense of mistaken identification would be advanced by testimony of witnesses about the conduct or statements of the police at the time of the photo lineup. For example, Ms. Mello testified that the officer showing her the photo lineup stated "that he had apprehended someone who had fit the description that I had given the police the night of the robbery. And he said this person may or may not be in here . . . ." There is no satisfactory explanation for allowing evidence of the arrest to be admitted in support of a theory that improper police conduct had led to mistaken identification of appellant as the robber. Any improper conduct of the police regarding the arrest was irrelevant to the issue of mistaken identification.

■ Thus, defense counsel's failure to object to the admissibility of evidence surrounding the circumstances of appellant's arrest denied appellant effective assistance of counsel. The remaining question is whether the introduction of the evidence of appellant's arrest contributed to the verdict. Stated another way, is it reasonably probable that appellant would have

received a more favorable result if evidence of the arrest had not been admitted at trial? " '. . . A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People* v. *Ledesma, supra,* 43 Cal.3d at p. 218.)

In order to undermine confidence in the outcome, defense counsel's omission must involve a critical issue. In *People* v. *Lanphear, supra,* 26 Cal.3d at page 828, failure of defense counsel to object to the admission of evidence regarding other crimes was considered an omission that involved a critical issue. In fact, in *Lanphear* the court assumed for purposes of analysis that counsel's failure to object to other-crimes evidence deprived the defendant of a potentially meritorious defense. (*Id.,* at p. 828, fn. 6 [*Lanphear* was decided before the court held that a defendant need not be denied a potentially meritorious defense in order to establish denial of effective assistance of counsel].)

Here, evidence of the circumstances of appellant's arrest supported a finding of his guilt. The robber remained outside the ice cream store for a short time, apparently "casing" it. The robber showed the victim that he had a gun in his waistband and had his finger on the trigger. He did not remove the gun from his waistband. There is nothing in the record to show whether the gun was loaded. The robber in the instant case used fear rather than force to effectuate the crime. The facts surrounding appellant's arrest would support an inference that appellant was the robber. He was carrying the grenade with his finger on the detonating pin ring on a public street in front of a bank. A reasonable inference can be drawn that appellant intended to use the fear produced by his holding the grenade in this manner to commit a crime such as bank robbery. He was casing the bank as he did the ice cream store; he intended to use fear to commit robbery in the bank as he did when he committed a robbery in the ice cream store. In short, the facts of his arrest support an inference that appellant intended to commit a crime through the use of fear, and that he was guilty of the robbery in the instant case because of certain similarities between the facts surrounding his arrest and the facts surrounding the robbery.

Furthermore, the testimony identifying appellant as the robber could have been stronger. Although, as stated above, Ms. Mello positively identified appellant at the preliminary hearing and at trial, when presented with the second photo lineup she thought two people in it resembled the robber. When she was shown the second lineup, Staccia Lovecchio was at the level of six on a scale of one to ten in her certainty of identification. And, as stated above, Ms. Morales's identification was somewhat equivocal. Finally, there was evidence which tended to show that appellant was physically unable to run the distance from the crime scene to the area of the Lovecchio

residence in the time that the robber did. We find that, given the facts, counsel's failings undermined confidence in the outcome, and the judgment must be reversed for ineffective assistance of counsel.

■ Appellant urges that counsel was also inadequate because he failed to renew two motions he had made at the preliminary hearing, the first to suppress the fruits of what he argued was an illegal arrest, and the second to suppress Ms. Mello's identification as based upon an impermissibly suggestive photographic identification procedure. We address these points for the guidance of the trial court in the event that the People elect to retry this case.

Again, there is no sound reason for counsel's choice of tactics regarding the hand grenade incident. It is true that the validity of the arrest for the grenade incident was unassailable. Officer Bozzo had never before seen a hand grenade in the course of his duties; he was not familiar with grenades as trophies; and he had no training in the recognition of explosive devices. The magistrate ruled that, given these circumstances, it would have been foolish for the officer to act other than as he did. However, the fruits of that arrest had no possible relevance to this case, and therefore failure to move to exclude them may properly be characterized as "serious attorney error." (*People* v. *Bennett* * (Cal.App.).)

■ Regarding the photographic display and Ms. Mello's identification of appellant, at the preliminary hearing counsel thoroughly voir-dired the witness and explored the fairness of both photographic lineups. We have reviewed the photographic displays in question and conclude that counsel's acceptance of this ruling was reasonable. ■ "Trial counsel is not required to make futile objections, advance meritless arguments or undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel. [Citation.]" (*People* v. *Jones* (1979) 96 Cal.App.3d 820, 827 [158 Cal. Rptr. 415].)

■ We note that counsel argued the above points to the jury vigorously, emphasizing the likelihood of misidentification because of the photographic procedure and appellant's presence at the preliminary hearing and at trial. Counsel's approach to these issues was not deficient, but was within professional standards of reasonableness. We note further that the court fully instructed the jury about factors to be considered in determining the weight to give to eyewitness testimony and identification and that lack of motive should be viewed as tending to show innocence. Finally, we find it

---

* Reporter's Note: Opinion (F008035, F009682) deleted upon direction of Supreme Court by order dated September 15, 1988.

significant that in the face of an unfavorable probation report recommending the middle term and incarceration in prison, the trial judge was convinced by defense counsel to impose a mitigated term and to permit appellant to serve it in a juvenile facility.

In sum, even if counsel adopted a strategy with which reasonable minds might differ on some issues, his errors on others "impact[ed] the integrity of the adjudicatory process regarding the findings of law or facts pertaining to the determination of guilt or innocence and the consequences that flow therefrom." (*People* v. *Bennett,* * *supra* (Cal.App.).) Accordingly, we agree with appellant's assertion that counsel was inadequate. (*People* v. *Ledesma, supra,* 43 Cal.3d 171.)

The judgment is reversed.

Barry-Deal, J., and Merrill, J., concurred.

---

* See footnote, *ante*, page 97.