Filed 12/23/13  P. v. Mouton CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C072810 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF106254, CRF115396, CRF121590) |
| v. | |
| WENDELL RAY MOUTON, | |
| Defendant and Appellant. | |

In a 2010 case (No. CRF106254), defendant Wendell Ray Mouton pleaded no contest to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and admitted a 1994 first degree burglary strike conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12).  Imposition of sentence was suspended and defendant was placed on probation for three years pursuant to Proposition 36 (Pen. Code, § 1210.1).

In a 2011 case (No. CRF115396), defendant pleaded no contest to possession of methamphetamine, admitted the 1994 strike, and admitted that the offense constituted a violation of his probation in the 2010 case.  In exchange, a related count was dismissed and an unrelated misdemeanor case was dismissed with a *Harvey* waiver.  (*People v.*

1

*Harvey* (1979) 25 Cal.3d 754.) The court reinstated Proposition 36 probation in the 2010 case and placed defendant on Proposition 36 probation in the 2011 case.

In a 2012 case (No. CRF121590), defendant pleaded no contest to possession of methamphetamine, admitted the 1994 strike and admitted that the offense constitutes a violation of his probation in the 2010 and 2011 cases. The trial court later ruled the plea agreement unlawful but did not address the status of the probation violations. Thereafter, a jury found defendant guilty of possession of methamphetamine and found that he had been convicted of the 1994 strike. No further finding was made on the probation violations and all parties evidently assumed that the admissions remained valid. No issue of their validity is raised in this appeal.

The trial court denied defendant's *Romero* motion. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.) It found him unamenable to drug treatment, refused to reinstate his probation in the 2010 case, and found him ineligible for reinstatement on probation in the 2011 case. The court sentenced defendant to prison for six years eight months, consisting of four years for the 2010 case, 16 months for the 2011 case, and 16 months for the 2012 case.

In the 2012 case, defendant was ordered to pay a $240 restitution fine and a suspended $240 parole revocation fine. In the 2010 and 2011 cases, defendant was ordered to pay the "previously-ordered restitution fines," the "previously-ordered probation revocation restitution fines," the "[p]reviously-ordered criminal laboratory analysis fees and penalty assessments," and the "previously-ordered drug program fee[s] and penalty assessments." In addition, defendant was ordered to pay a $30 court facilities assessment and a $40 court operations fee *in each case*.

On appeal, defendant contends (1) his trial counsel rendered ineffective assistance in the trial of the 2012 case when she failed to object to the prosecutor's questions relating to the 2011 offense and failed to request a limiting instruction, and (2) the trial court failed to recite all fees, fines and penalties with the applicable authorities, and the

abstract of judgment contains various errors.  We remand for further proceedings related to fines and fees but otherwise affirm the judgment.

FACTS AND PROCEEDINGS

Our statement of facts is limited to the 2012 case.  On April 20, 2012, about 3:00 a.m., Woodland Police Officer Jeremy Snyder responded to a report of two suspicious people in a residential area.  Snyder approached defendant who was wearing a "Hello Kitty" backpack that was very small and the sort of item "a child would have."  Snyder searched the backpack and discovered a small yellow plastic baggie that contained an off-white crystalline substance later identified as methamphetamine.  Snyder weighed the methamphetamine and determined it was 0.05 grams.  He believed there was sufficient methamphetamine to snort or smoke in a pipe and more than the residue commonly found on an empty bag.  After testing the substance, Snyder arrested defendant and advised him of his constitutional rights.  Defendant told Snyder he had found the backpack in a trash can the previous day.  He "cleaned . . . out" the backpack and put his own items inside. He said he used methamphetamine approximately every other day.

Officer Snyder testified on redirect examination that 0.2 grams of methamphetamine usually sells for $20 to $25.  On recross examination, he confirmed that 0.1 grams ("a dime bag") generally sells for $10.  He estimated that the methamphetamine found in defendant's bag was worth "maybe five to ten dollars."

A criminalist testified that the methamphetamine she analyzed in this case weighed 0.03 grams, slightly less than the 0.05 grams measured by Officer Snyder.

Defendant testified that he found the backpack in a dumpster at night.  The backpack was "a little girl's thing," and he intended to give it to a woman who could not afford to buy her own items.  He did not intend to keep it.  In the darkness, defendant did not see the yellow baggie inside the backpack.

3

Defendant testified that generally he would spend $20 for methamphetamine. The drug would be packaged in a remnant of a plastic grocery bag or in a baggie smaller than the one Officer Snyder found in the backpack. Immediately after the purchase, he would put the methamphetamine in a pipe that he would carry throughout the day. He would not carry the baggie that had contained his purchase. When shown the baggie found by Officer Snyder, defendant said he would not put its contents in his pipe because it would have no effect on him. He implied that he would not have purchased the baggie because it is not a usable amount.

## DISCUSSION

### I

### *Ineffective Assistance of Counsel*

Defendant contends his trial counsel rendered ineffective assistance when she failed to object to the prosecutor's questions relating to the 2011 case and failed to request a limiting instruction. Defendant claims he was prejudiced when the prosecutor asked the jury to find him dishonest based on the impeaching effect of the 2011 evidence. Defendant claims prejudice is further shown by the jury's question whether he had been convicted of the 2011 incident. We do not find ineffective assistance of counsel.

Defendant's trial counsel moved in limine to exclude evidence of defendant's prior bad acts. The prosecutor represented that, "absent the door being open," he was not seeking to admit evidence of the 2010 and 2011 methamphetamine offenses. The court ruled: "I will be reserving on whether any other conviction would be admissible if the door gets opened to make it relevant. [¶] But my ruling at this point is absent further ruling of the Court, the only prior conviction that will be permitted for impeachment or in the case in chief would be the 1994 first degree burglary."

4

Officer Snyder testified that 0.1 grams of methamphetamine sells for about $10, and 0.2 grams for about $20 to $25; the quantity found in defendant's bag was worth "maybe five to ten dollars."

A criminalist testified that the methamphetamine weighed 0.03 grams, slightly less than the 0.05 grams measured by Officer Snyder.

Defendant testified that he "always buy[s]" methamphetamine in a sealed grocery bag or "a little bitty bag like this to hold about a twenty." This exchange ensued:

"Q. So when you say 'about a twenty,' is that twenty dollars worth?

"A. Yes.

"Q. And do you know how much that is?

"A. Zero -- point zero two [*sic;* 0.2].

"Q. And when you buy the methamphetamine, you say it generally comes in [] plastic grocery bags, at times it comes in little plastic baggies?

"A. Yes.

"Q. Is it a baggie about the size of the yellow one I just showed you [People's Exhibit 1A], or is it a different size?

"A. Different size, way smaller. That bag you showed me is too big.

"Q. You've never bought a baggie that big?

"A. No."

Defendant further stated that he did not carry baggies with him and that he always puts the methamphetamine he buys into his pipe. Sellers do not sell less than $10 worth because it is not profitable, and he would not use $5 worth because it is not a usable amount.

The prosecutor requested a sidebar discussion, and the trial court called a recess to address the issue outside the jury's presence. The prosecutor argued that defendant's statements that he buys methamphetamine "in bindles and never in a plastic baggie like this," and that he "never has more [*sic*] than point one grams because that's all he will

5

buy," were inconsistent with his conduct when Officer Barrera arrested him for the 2011 offense and found a baggie containing 0.08 grams of methamphetamine. The court recollected that defendant had said he "never has less than point one," and defendant's trial counsel recollected that he had said he "doesn't use less than point one."

The prosecutor reiterated that defendant said he "[d]oesn't use less than point oh one [*sic;* 0.1], and I have a case showing that when he was caught, he had a baggie with point zero eight grams in it. [¶] So I believe that he's opened the door."

The trial court rejected the prosecutor's argument and found that defendant's 2011 conduct was not inconsistent with his trial testimony. The court ruled "[w]e are talking about substantially lesser amounts," in that the 0.03 grams measured by the criminalist is substantially less than the 0.08 grams at issue in 2011. Recalling defense counsel's clarification, the court stated defendant's "testimony was not that he never possesses less than a tenth of a gram. If he had said that, I would agree that the door would be open to possibly getting to the other case." The court further noted that, in the 2011 case, defendant had possessed not only the 0.08 grams in a bindle but also 0.12 grams in a glass smoking pipe; thus, the 2011 case had involved "possessing two-tenths of a gram."

The prosecutor then requested permission to cross-examine defendant on two points: whether he ever possessed "less than a ten-dollar amount of methamphetamine," and "if he ever hangs onto an amount of methamphetamine in a baggie without storing it in his pipe."

On cross-examination, defendant denied that he would "hang onto methamphetamine that is less than the point one grams." When the prosecutor asked if he "remember[ed] ever having been arrested with a baggie that had less than point one grams in it," defendant responded, "No. When I was arrested, it was more. It was like a tenth."

Defense counsel objected and asked to approach the bench. After an unreported sidebar discussion, the prosecutor continued and introduced defendant's 2011 conviction

6

to impeach his prior testimony. The prosecutor asked whether the baggie of drugs in that case had contained "zero point eight grams [sic; 0.08]" of methamphetamine and defendant answered he did not think it was that amount.

The prosecutor next asked defendant whether he "also had a pipe that day with a larger amount." Defendant responded that he "couldn't say how much was in the pipe." The prosecutor then asked defendant whether his prior testimony, that whenever he gets methamphetamine he automatically loads it into his pipe, was accurate. Defendant clarified that after a purchase he loads his pipe when he reaches his destination; he had not reached it in the 2011 case.

In response to defendant's denial that he would "hang onto less than a tenth of a gram," the prosecutor asked whether defendant would be surprised to learn that the 2011 baggie had contained just 0.08 grams. Defendant explained that, if the seller says it is $10 worth, he gives the seller $10; defendant is "not the one weighing it."

" ' "[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.]' [Citation.]" (*People v. Avena* (1996) 13 Cal.4th 394, 418; footnote omitted.)

" ' . . . "[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such

7

a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Defendant contends his 2011 case was not admissible to prove his bad character, predisposition to criminality, or conduct on a specific occasion; and it had little tendency to prove his consciousness of his guilt or his knowledge of the nature of methamphetamine. Thus, he claims the evidence was subject to exclusion under Evidence Code section 1101, and his trial counsel's failure to object on that ground constituted deficient performance.

But the prosecution was not using the 2011 evidence for any of the foregoing purposes. Instead, the purpose was to impeach defendant's testimony. By its terms, Evidence Code section 1101 does not affect evidence offered to attack the credibility of a witness. (Evid. Code, § 1101, subd. (c).) Defendant's trial counsel could not have been ineffective for having failed to make a futile Evidence Code section 1101 objection. (*People v. Stratton* (1988) 205 Cal.App.3d 87, 97.) We reject defendant's claim that the jury should have been instructed with CALCRIM No. 375 on evidence admitted for purposes specified in Evidence Code section 1101, subdivision (b).

Defendant claims the 2011 evidence was more prejudicial than probative within the meaning of Evidence Code section 352, and his trial counsel's failure to object on that ground constituted deficient performance. But, as he recognizes, the present record does not show whether an Evidence Code section 352 objection was made at the unreported sidebar discussion. Because trial counsel could have litigated the Evidence Code section 352 issue off the record, the claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding. (*People v. Mendoza Tello, supra,* 15 Cal.4th at pp. 266-267.)

Alternatively, if trial counsel did not litigate the issue, it could have been because she understood that defendant's 2011 retention of a baggie containing 0.08 grams of methamphetamine was highly relevant to rebut his claim that he would not knowingly

8

"hang onto less than a tenth of a gram," and thus did not knowingly possess the 0.03 to 0.05 grams at issue in this case. Counsel could have recognized that the 2011 possession was not *unduly* prejudicial in that it did not tend *uniquely* " 'to evoke an emotional bias against the defendant as an individual' " while having " 'very little effect on the issues.' " (*People v. Padilla* (1995) 11 Cal.4th 891, 925, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) This issue, too, is most appropriately litigated in habeas corpus proceedings. (*People v. Mendoza Tello, supra,* 15 Cal.4th at pp. 266-267.)

Defendant appears to suggest his trial counsel was ineffective for having failed to object that his 2011 simple possession of methamphetamine was not a crime of moral turpitude. (Citing *People v. Castro* (1985) 38 Cal.3d 301, 317 (*Castro*).) But no issue of moral turpitude was presented because the prosecutor was not attacking defendant's character. (Evid. Code, § 787.) Rather, the prosecutor was impeaching defendant's statement that he *would not* possess less than 0.1 grams of methamphetamine by showing that he *had done so.* Defendant's trial counsel was not ineffective for having failed to make a futile *Castro* objection. (*People v. Stratton, supra,* 205 Cal.App.3d at p. 97.)

Defendant argues his trial counsel was ineffective for having failed to object when the prosecutor mistakenly questioned him about "zero point eight" grams of methamphetamine rather than 0.08 grams. Defendant claims the mistake "allow[ed] the prosecution to create confusion as to which amount the prosecution was inquiring about. There is a significant difference between 0.8 grams and .08 grams of methamphetamine."

But trial counsel could have understood that the gist of the prosecutor's argument was reasonably clear: contrary to the trial testimony, defendant *might possess less than 0.1 grams of methamphetamine*. Trial counsel could have believed that jurors would perceive any references to 0.8 grams--eight times the amount in question--as an obvious mistake. The claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding. (*People v. Mendoza Tello, supra,* 15 Cal.4th at pp. 266-267.)

9

Defendant argues the prosecutor's line of questioning was unduly prejudicial because the jury was not instructed to consider the 2011 evidence only for impeachment. He claims trial counsel was ineffective for having failed to request such an instruction, even after the jury sent the trial court a note asking whether defendant had been convicted of the 2011 offense.

The People counter that the jury was instructed "to limit its consideration of the prior possession evidence to weighing [defendant's] credibility." (Citing CALCRIM No. 3100.) But CALCRIM No. 3100 was limited to the 1994 burglary and did not encompass the 2011 possession of methamphetamine. Thus, the People's argument fails.

Defendant's argument is not properly before us. This court has held that the failure to request an instruction limiting the use of evidence to a particular purpose precludes the defendant from raising the issue on appeal. (*People v. Garcia* (1986) 178 Cal.App.3d 814, 823, citing *People v. Richards* (1976) 17 Cal.3d 614, 618-619, disapproved on other grounds in *People v. Carbajal* (1995) 10 Cal.4th 1114, 1126.)

Trial counsel's failure to request a limiting instruction could not have been prejudicial. The prosecutor demonstrated the proper use of the evidence in his summation: "We know that [defendant] was less than honest on the stand when he talks about things like 'I would never have less than ten dollars of meth, and I always load it right away in my pipe,' and lo and behold, well, that's not always the case. We know at least one other time that wasn't the truth." We reject defendant's unsubstantiated claim that the prosecutor "improperly used" the 2011 evidence to impeach him.

It is not reasonably probable that any juror used the evidence, not for the proper purpose of evaluating defendant's credibility, but for the improper purpose of concluding that because defendant once possessed a baggie containing slightly less than the 0.1 grams he expects to receive for his $10 he must have possessed the present baggie that contained half or less than half (0.03 to 0.05 grams) the expected amount. (*People v. Avena, supra,* 13 Cal.4th at p. 418.) This inference is debatable at best. It is not

10

reasonably probable that any juror would have entertained a reasonable doubt of defendant's guilt had a limiting instruction been given.  (*Ibid.*)

II

*Judgment and Abstract of Judgment*

Defendant contends, and the People concede, the matter must be remanded to the trial court to set forth the amounts and statutory authority for all fines, fees, penalties, and assessments imposed in these three superior court cases.  We agree.

In the 2012 case, defendant was ordered to pay a $240 restitution fine and a suspended $240 parole revocation fine.  In the 2010 and 2011 cases, defendant was ordered to pay the "previously-ordered restitution fines," the "previously-ordered probation revocation restitution fines," the "[p]reviously-ordered criminal laboratory analysis fees and penalty assessments," and the "previously-ordered drug program fee[s] and penalty assessments."  In addition, defendant was ordered to pay a $30 court facilities assessment and a $40 court operations fee *in each case*.

The abstract of judgment separately states the previously listed restitution fines, probation revocation fines, and parole revocation fines.  However, it does not list all the components of the laboratory and drug program fees.  Rather, it lists $50 and $150 base amounts and $800 aggregate amounts but does not indicate how the latter was determined.

In *People v. High* (2004) 119 Cal.App.4th 1192, 1200, this court stated: "Although we recognize that a detailed recitation of all the fees, fines and penalties on the record may be tedious, California law does not authorize shortcuts.  All fines and fees must be set forth in the abstract of judgment.  [Citations.]  The abstract of judgment form used here, Judicial Council form CR-290[] provides a number of lines for 'other' financial obligations in addition to those delineated with statutory references on the preprinted form.   If the abstract does not specify the amount of each fine, the Department of Corrections cannot fulfill its statutory duty to collect and forward deductions from

11

prisoner wages to the appropriate agency. [Citation.] At a minimum, the inclusion of all fines and fees in the abstract may assist state and local agencies in their collection efforts. [Citation.] Thus, even where the Department of Corrections has no statutory obligation to collect a particular fee, such as the laboratory fee imposed under Health and Safety Code section 11372.5, the fee must be included in the abstract of judgment. [Citation.]"

In this case, the trial court's references to "[p]reviously-ordered criminal laboratory analysis fees and penalty assessments" and "previously-ordered drug program fee[s] and penalty assessments" do not assist the Department of Corrections and Rehabilitation or relevant local agencies in their efforts to collect sums due from defendant. On remand the trial court shall correct the abstract of judgment to list all fines, fees, penalties, and assessments imposed in the 2010 and 2011 cases.

We note that the abstract of judgment must be corrected in several additional respects. First, in part 1, the three counts must be listed by case letter, i.e., 1A, 1B and 1C; they may not be listed simply as count 1.

Second, in part 9c of the abstract, the "Fines" for "Case A," "Case B" and "Case C" must not include "PC 1202.5" theft fines because no such fines have been imposed. The $800 listed on the line preceding "PC 1202.5" appears to refer to the aggregate of the laboratory fee, drug program fee, and unspecified penalty assessments. Each of these amounts must be stated separately on the abstract.

Finally, part 9d must reflect that the $40 court operations assessment and the $30 conviction assessment have been imposed in each case.

In a footnote, the People state that the abstract of judgment recorded "$200 fines for cases 'A' and 'B' [*sic*; 'C'] under Penal Code section 1202.45 instead of $240 fines." We find no error. Part 9a of the abstract correctly lists $200 fines for the 2010 and 2011 offenses and $240 fines for the 2012 offense. (Pen. Code, § 1202.4, subd. (b)(1).)

12

DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court with directions to correct the abstract of judgment to reflect all fines, fees, penalties and assessments. The court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


       HULL           , J.


We concur:


     BLEASE       , Acting P. J.


     MURRAY      , J.

13