Filed 12/4/14  P. v Campbell CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DANNY RAY CAMPBELL,

    Defendant and Appellant.

E059507

(Super.Ct.No. FVI1300914)

OPINION

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, Meagan J. Beale, and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION[1]

A jury convicted defendant Danny Ray Campbell on count 2 of simple assault—a lesser included offense of the original charge of aggravated assault (Pen. Code, §§ 240, 245, subd. (a)(4))—and on count 3 of making criminal threats. (§ 422.)[2] In a bifurcated proceeding, the trial court found true defendant's four prior felony convictions for which he had served prison terms. (§ 667.5, subd. (b).) The court sentenced defendant to six years in state prison, consisting of the middle term of two years on count 3 plus one year each for defendant's prior convictions.

On appeal, defendant makes two arguments: that he received ineffective assistance of counsel (IAC) because defense counsel did not object to prejudicial out-of-court statements and that the trial court erred by not instructing the jury on the lesser included offense of attempted criminal threats. In either instance, any error was harmless. We affirm the judgment.

II

STATEMENT OF FACTS

Defendant rented a room in a Hesperia apartment from Delois Young for about two months. Tammy Kent was Young's daughter. Also sharing the two-bedroom apartment were four other people: Young's other daughter, Miracle, and three children,

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] Count 1 for residential burglary (§ 459) was dismissed.

including Kent's six-year-old son. Defendant was angry about the lack of privacy and complained that Young got on his nerves.

On March 31, 2013, defendant spent the day and evening with Kent and her boyfriend, Trayvon Matthews. The trio had intended to attend a barbeque at the home of Kent's friend, Marquita, but the event had been canceled. At close to midnight, Kent and Matthews drove defendant back to Young's apartment complex. While defendant sat in the back seat, Kent sat in the front passenger seat. They were talking while Matthews reclined in the driver's seat with a jacket over his face.

Kent insisted defendant needed to leave the car and enter the apartment but defendant continued "talking and talking." Defendant was mad about Marquita canceling the barbeque because he had wanted to have sex with her. Defendant became agitated and mentioned smoking "crack" the day before. Defendant called Young a "bitch" and commented that he wanted to kill her. Kent became angry with defendant. Defendant also called Kent a "bitch" and used a racial epithet. Because Matthews did not respond, Kent believed Matthews must have thought defendant was not serious.

When Kent told defendant he was acting "psycho" and asked him again to leave the car, he grabbed her by the neck and began choking her. Kent struggled and felt like she was about to die. When Matthews finally noticed what was happening, he grabbed defendant and told him to "get off" Kent.

Defendant said about Kent, "'I'll kill that bitch. I'll kill that bitch.'" Kent believed defendant was serious because he "used to brag about" being in jail for "murder, attempted murder" all the time. Kent's uncle had also told her that defendant had been

3

released from jail "for some type of attempted murder."

Defendant left the car and continued to yell, "'I'm going to go kill your fucking mom.'" Young, Miracle, and the three children were all inside the apartment. Defendant started pounding on the apartment door. Young ignored the pounding because she was trying to sleep and it was late. Defendant stopped pounding on the door and started to leave the premises.

Meanwhile, Kent left the car, intending to warn her mother. When Young cracked open the front door, Kent ran into the house. Kent was "hysterical" and told her mother not to let defendant inside. Kent warned, "He said he was going to kill you and the kids."

Defendant came back to the front door and asked to come in and to collect his belongings. Young blocked the entry and told defendant to wait. Defendant forced open the door and entered the apartment. He grabbed a bag from his room, which he put outside before returning. Young yelled that defendant was going to jail. Defendant "took a swing" at Young but Miracle pulled Young inside the bedroom.

Kent and the others "barricaded" themselves in the bedroom and called the police while defendant kicked at the bedroom door, shouting he was going to kill the "bitch." Kent was "so scared." Young thought defendant would hurt her and she felt sustained fear throughout defendant's kicking and yelling. When Kent saw a patrol car arrive, she climbed out the bedroom window to flag down the officer.

A deputy sheriff, Brian Lovasco, responded in about five minutes. Kent told the deputy that defendant was inside and had threatened her mother. Deputy Lovasco found Young walking down the hallway. Defendant emerged, holding trash bags. He appeared

4

"'upset" and set down the bags at the deputy's direction.

In interviews with the deputy, Kent and Young gave accounts similar to their testimony although Kent did not mention thinking she would die while being choked and neither Kent nor Young mentioned that, while inside the apartment, defendant had threatened to kill Young. Matthews confirmed that defendant put Kent in a chokehold and that he had pushed defendant off. Matthews also heard Kent screaming but he did not hear any threats. The deputy arrested defendant.

Young had a juvenile conviction for arson and a 1997 felony driving under the influence conviction. Kent had prior theft convictions in 2005, 2008, 2011, and 2012; a 2010 conviction for domestic battery when she slapped her "baby daddy" after he spit in her face; and a 2010 conviction for using force to resist an officer.

III

EVIDENCE CODE SECTION 352

Kent testified that defendant had bragged about serving time for murder or attempted murder although she had never taken his boast seriously.[3] Kent's uncle had also spoken to her about defendant's criminal past. Defense counsel objected on hearsay grounds and the trial court overruled the objection, instructing the jury:

"When the truth of the matter doesn't count, for instance in this case, whether or not whatever she was told by her uncle was true or false, it doesn't matter if she was told

---

[3] According to the probation report, defendant was sentenced to two years in prison for causing great bodily injury to an elder (§ 368, subd. (b)(1)), after an unprovoked attack in 2010 on his landlord.

5

that and that affected how she felt.  In other words, if something that the uncle told her caused her to have concern about what might or might not have been said by [defendant], then the point is that we are concerned with the effect on the listener.

"And this listener can be cross-examined about whether she really heard that, whether it was really something she believed to be true or not.  So that's the difference between hearsay used in a court of law, and hearsay used in general parlance. . . .

"So now you've had that special definition for what we mean by hearsay in a court of law.  It doesn't matter.  It's not hearsay objectionable unless it's something that is offered for the truth of the matter asserted."

On appeal, defendant contends that defense counsel provided ineffective assistance by failing to make an alternative objection that Kent's testimony was more prejudicial than probative under Evidence Code section 352.  The trial court has the discretion to exclude evidence if its probative value "is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

However, defendant cannot demonstrate IAC under either prong of *Strickland v. Washington* (1984) 466 U.S. 668.  "Prejudicial" is not synonymous with "damaging." (*People v. Bolin* (1998) 18 Cal.4th 297, 320.)  A defendant claiming IAC has the burden of proving (1) his attorney's performance fell below an objective standard of reasonableness and (2) there was a reasonable probability the defendant would have obtained a more favorable result absent counsel's error.  (*Strickland,* at pp. 687, 694.)

6

Prejudice must be established as "'a "demonstrable reality," not simply speculation as to the effect of the errors or omissions of counsel.'" (*In re Clark* (1993) 5 Cal.4th 750, 766; *People v. Mayfield* (1997) 14 Cal.4th 668, 784.)

Here defendant cannot show counsel's performance was objectively unreasonable. Obviously the court found the challenged testimony was highly probative. Hence, the court carefully instructed the jury about why the evidence was relevant in spite of its truth or falsity. Any other objection would have been overruled. Furthermore, the evidence was also probative on the charge of criminal threat and whether Kent was reasonably in fear for her safety. (§ 422; see *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) In other words, the probative value was not substantially outweighed by any prejudicial effect, making an objection futile on those grounds. (See *People v.Kipp* (1998) 18 Cal.4th 349, 373; *People v. Stratton* (1988) 205 Cal.App.3d 87, 97.)

There is also no prejudice where it is not reasonably probable the court would have sustained an objection based on section 352. (See *People v. Williams* (1997) 16 Cal.4th 153, 206.) Kent's testimony about defendant's bragging was equivocal and ambiguous. The trial court instructed the jury the testimony was not to be considered for the truth of the matter but only for its effect on Kent and that defendant could cross-examine Kent on whether she actually heard the statement and believed it to be true. Nothing in the record indicates the jury did not follow its instructions. Jurors are presumed to be intelligent people ""'"capable of understanding instructions and applying them to the facts of the case"'"].) (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

Furthermore, although there may have been questions about Kent's credibility, the

jury demonstrated that it heeded the court's instructions when it convicted defendant of a lesser included offense on the assault charge and requested assistance in reconciling two instructions as to the criminal threat charge. If the jurors had believed that Kent was a murderer, they would have been much less inclined to find him guilty of the lesser assault. As discussed below, they also gave full consideration to the charge involving criminal threats.

Defendant has not established prejudice or the reasonable probability of a more favorable result absent counsel's alleged shortcomings. We conclude counsel did not render ineffective assistance in failing to make an Evidence Code section 352 objection. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.)

IV

INSTRUCTION ON ATTEMPTED CRIMINAL THREAT

Defendant next contends the trial court had a duty to instruct sua sponte on the lesser included offense of attempted criminal threat. A trial court has an independent duty to instruct the jury on lesser included offenses when there is substantial evidence about whether all the elements of a charged offense are present and that defendant committed the lesser included offense, which would exculpate the defendant from guilt of the greater offense. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218; *People v. Cunningham, supra,* 25 Cal.4th at p. 1008; *People v. Breverman* (1998) 19 Cal.4th 142, 162; *People v. Webster* (1991) 54 Cal.3d 411, 443.) In deciding whether there is substantial evidence of a lesser offense, "courts should not evaluate the credibility of witnesses, a task for the jury." (*Breverman,* at p. 162.)

8

The appellate court independently reviews a trial court's failure to instruct on a lesser included offense. (*People v. Breverman, supra,* 19 Cal.4th at p. 162.) We hold there was no substantial evidence for the jury to conclude that defendant was guilty of the lesser offense of attempted criminal threat but not guilty of the charged offense of making a criminal threat. (*Id.* at p. 177.)

Attempted criminal threat (§§ 664/422) is a lesser included offense of making a criminal threat: "[A] defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action." (*People v. Toledo, supra*, 26 Cal.4th at p. 230; *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607, 609.) For example, if a threat does not actually cause the threatened person to be in sustained fear for her safety, although that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat. (*Toledo,* at p. 231.)

Under section 422, the prosecution was required to prove that defendant intentionally made a criminal threat that actually caused Kent "'to be in sustained fear'" for her own safety or that of her immediate family, and that Kent's fear was reasonable under the circumstances. (*People v. Toledo, supra*, 26 Ca1.4th at pp. 227-228.) CALCRIM No. 1300 instructs that sustained fear means fear for "a period of time that is more than momentary, fleeting, or transitory." Defendant contends that the jury might have concluded Kent's fear was not "sustained" had it been instructed on the lesser included offense of attempted criminal threat. Defendant claims that less than five

9

minutes passed between when defendant made his first threat and Deputy Lovasco arrived. Although 15 minutes would have been long enough for "sustained fear," five minutes was not enough. (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1155-1156; CALCRIM No. 1300; see *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1138-1140; *People v. Fierro* (2010) 180 Cal.App.4th 1342.)

In *Ricky T.*, the appellate court found a lack of substantial evidence to support the element of sustained fear where a high school student left class to use the restroom and, upon returning, "found the classroom door locked and pounded on it." (*In re Ricky T., supra,* 87 Cal.App.4th at p. 1135.) When the teacher opened the door, the door struck the student, who became angry, cursed at the teacher, and said, "'I'm going to get you.'" The teacher "felt threatened" and sent the student to the office. The police were not notified until the next day. The appellate court found there was simply no evidence that the teacher "felt fear beyond the time of the angry utterances" and the student's response was "an emotional response to an accident rather than a death threat that induced sustained fear." (*Id.* at pp. 1140-1141.) Thus, nothing indicated any fear was more than fleeting or transitory. (*Id.* at p. 1141.)

The circumstances in this case more closely resembles *People v. Fierro, supra,* 180 Cal.App.4th 1342, involving an altercation at a gas station during which the defendant lifted his shirt to display a weapon and threatened to kill the victim. The victim drove away shortly after the threat, but called 911 within 15 minutes and ultimately testified he was in fear for his life. (*Id.* at p. 1346.) Even though the threat occurred during a minute and the victim departed immediately, the court held that

10

defendant's "actions created a sustained fear, a state of mind that was certainly more than momentary, fleeting, or transitory." (*Id.* at p. 1349.)

Here, defendant first threatened and choked Kent in the car. The threats continued inside the apartment until she climbed out of the bedroom window when the deputy sheriff arrived. Kent specifically testified she was afraid throughout the episode that defendant might actually kill her or her family. No evidence showed that she did not experience sustained fear. Therefore, defendant is asking this court improperly to reevaluate Kent's credibility as a witness. (*People v. Breverman, supra*, 19 Cal.4th at p. 162.)

The trial court did not err by failing to instruct on attempted criminal threat as a lesser included offense because there is no substantial evidence that the lesser offense, but not the greater, was committed. (*People v. Breverman, supra*, 19 Cal.4th at p. 162.) Furthermore, any error was harmless and does not warrant reversal unless an examination of the entire cause, including the evidence, discloses that it was reasonably probable defendant would have achieved a more favorable result had the error not occurred. (*Id.* at pp. 177-178.) The evidence clearly demonstrated the sustained fear necessary to convict defendant for making a criminal threat. The jury was properly instructed on the definition of "sustained fear" and found beyond a reasonable doubt that Kent experienced such fear.

Defendant places great weight on the jury's question about the interplay between CALCRIM No. 1300 [the six elements of criminal threat] and CALCRIM No. 3500 [unanimity of acts]. The jury asked: "Do all 6 instructions have to apply as #1300 states,

11

or do we have to prove only 1 act as #3500 states." The court replied: "Only one act must be proved to satisfy 1300 but it must prove all six elements. 3500 just says that you may find more than one such act was proved but you all must agree which act was proved." The court addressed the jury's concern about whether it had to find all six elements true for each threat made by defendant and enabled the jury to reach a verdict.

The jury's question did not signify doubt. Given the several distinct threats made by defendant, the jury wanted to reconcile the unanimity instruction with the instruction on making a criminal threat. There is no reasonable probability error affected the outcome of the case. (*People v. Breverman, supra*, 10 Cal.4th at p. 177.)

V

DISPOSITION

We hold there was no IAC or instructional error and any error was harmless. We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

RICHLI
J.

12